Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 2224 | **DATE** | 3/26/2002 |
| **CASE TITLE** | Kapetanovic et al vs. Cannell et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter MEMORANDUM, OPINION AND ORDER: For all of the foregoing reasons, we grant the summary judgment motions of defendants Cannell Products, Inc. [182-1] and Newsweb Corporation [181-1]. We deny summary judgment filed by plaintiff, Ivan and Rosita Kapentanovic, and defendants Stephen Cannell [179-1] and Tradewinds Entertainment, Inc. [180-1] and defendants' joint motion for summary judgment [183-1]. We deny plaintiffs' motion for sanctions due to spoilation of evidence [197-1] and motion to strike the affidavits of Jeffery Dalla Betta and Stephen Cannell [197-2].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAR 27 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 211 |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IVAN KAPETANOVIC, ROSITA KAPETANOVIC, Plaintiffs, v. STEPHEN J. CANNELL PRODUCTIONS, INC., TRADEWINDS ENTERTAINMENT, INC., NEWSWEB CORPORATION (a/k/a Channel 50 TV), STEPHEN J. CANNELL, and MR. BEAUREGARD SUTHERLAND, Defendants. | No. 97 C 2224<br><br>Judge Wayne R. Andersen |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on the cross motions for summary judgment of plaintiffs, Ivan and Rosita Kapetanovic, and defendants, Stephen J. Cannell Productions, Inc., Tradewinds Entertainment, Inc., Newsweb Corporation, and Stephen J. Cannell. Also before the court are plaintiffs' motion for sanctions due to spoliation of evidence and plaintiffs' motion to strike the affidavits of Stephen Cannell and Jeffrey Dalla-Betta. For the following reasons, the summary judgment motions of Cannell Productions and Newsweb Corp. are granted. All other motions are denied.

## BACKGROUND

This litigation arises from the broadcast of a television program that dealt with the trials and tribulations of international arms smugglers. The television series was entitled "U.S. Customs: Classified" (the "series"). One episode focused on the activities of an alleged arms smuggler named "Ivan" and was based on actual files from the United States Customs Service (the "Program"). The

Program included videotape footage of the plaintiffs, Ivan and Rosita Kapetanovic. The narrators of the Program described the plaintiffs as criminals and arms smugglers who, among other things, were illegally smuggling guns out of the country to further their goal of "starting a war." On March 31, 1997, plaintiffs commenced this litigation asserting claims for libel, slander, false light, and intentional infliction of emotional distress based on the television broadcast of the "U.S. Customs: Classified" Program.

I. The History

Plaintiffs left the Yugoslavian republic of Croatia in 1955 and ultimately settled in a suburb of Phoenix, Arizona and became United States citizens. Plaintiffs became actively involved in the campaign for Croatia to win its independence. They sponsored fund raising events and attempted to influence the position of the United States government with respect to Croatia by writing letters to U.S. Senators and other influential people.

In attempting to locate and price available weapons on behalf of the Croatian independence movement, Mr. Kapetanovic managed to become the subject of two undercover Customs Service investigations into illegal arms smuggling. Mr. Kapetanovic ultimately was arrested and tried in Arizona on federal arms smuggling charges and was acquitted. However, two Croatian nationals who were arrested with Mr. Kapetanovic pled guilty and nolo contendere, respectively, and were deported. Ms. Kapetanovic was not arrested in connection with the investigation.

II. The Program

On October 11, 1994, the Customs Service entered into a Memorandum of Understanding ("MOU") with GRAB Productions, Inc. ("GRAB") governing the production of a television series called "U.S. Customs: Classified." The MOU provided, among other things, that the series would

2

be based on actual Customs Service files and would portray only matters that had been "fully adjudicated." It also required GRAB to independently verify the facts of each investigation featured in the series.

One of the investigations included in the series was the arms smuggling investigation which led to Mr. Kapetanovic's arrest and trial. The episode introducing that investigation (#1008) was first broadcast on November 5, 1995 and was rerun on March 30, 1996.

The introduction to the Program stated that: "The stories you are about to see are from previously classified files of the U.S. Customs Service. They contain dramatic recreations, and, whenever possible, actual surveillance footage." The Program identified one of the targets of the investigation as "Ivan." It included actual surveillance footage of undercover Customs agents meeting an unidentified man, hosting a barbeque for several alleged arms smugglers, and showing weapons to the alleged arms smugglers.

Plaintiffs assert that they were shown in the videotape and that they were falsely depicted in the Program as international arms smugglers and criminals. Among the statements published in the Program were the following statements about the persons depicted: they were "low down foreign criminals"; they were "foreign smugglers"; Ivan was a "Croatian National in the market for illegal military weapons;" they were "serious about starting a war;" they wanted guns "smuggled out of the country to be used for an illegal purpose;" they were seeking "to get the highest body count for each dollar;" they were "willing to purchase a small tactical nuclear weapon;" they were "criminals;" and they "had been arrested twice." The program did not mention Mr. Kapetanovic's trial and acquittal, nor did it mention the pleas of his co-defendants. It simply stated that "two suspects were arrested." The Program did not refer to Rosita Kapetanovic by name.

3

III. The Defendants

Stephen Cannell is an actor, writer, and former producer of television programs. Cannell acted as an "on-air host" for the "U.S. Customs: Classified" series. Cannell was involved somewhat in creating, distributing, marketing, and financing the original series, although the extent of his involvement is greatly disputed. His company, Cannell Distribution, agreed to distribute the series when the series was in pre-production. However, prior to the actual distribution of the series, Cannell Distribution was merged into New World Communications Group, Inc. ("New World").

Cannell Productions, Inc. is a production company owned by Stephen Cannell. Cannell Productions was not included in the merger with New World, and it continues to be owned by Stephen Cannell. Plaintiffs claim that the Program was prepared, produced, and made available in part by Cannell Productions.

Tradewinds was formed for the express purpose of handling the financing of the "U.S. Customs: Classified" series. Tradewinds' president, Jeffrey Dalla Betta, approached Cannell Studios regarding the financing and distribution of the series. In order to finance the series, New World sent funds to Tradewinds approximately once a week. Tradewinds deposited the funds in its general operating account, then moved them to the "U.S. Customs: Classified" production account, from which they were transferred to GRAB Productions. After production of the series began, Tradewinds obtained the copyright for the series, which it assigned to New World.

Jeffrey Dalla Betta, Tradewinds' president, acted in a number of different capacities in connection with the series. First, he arranged for the financing of the series pilot. He obtained financing for the series and helped distribute it. Finally, he served as a supervising producer of the series.

Defendant Newsweb Corporation's Chicago-based television station WPWR was one of numerous television stations throughout the country which broadcast the Program. It is undisputed that Newsweb's only involvement with the Program was its broadcast.

IV. This Lawsuit

Plaintiffs' amended complaint contains claims of libel, slander, false light invasion of privacy, and intentional infliction of emotional distress against each of the defendants. Plaintiffs' slander and emotional distress claims were dismissed pursuant to an order dated January 25, 1999, leaving only plaintiffs' claims for libel and false light invasion of privacy.

## DISCUSSION

The court will grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.56(c). The Court will not render summary judgment if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The mere possibility of a factual dispute is not enough to defeat a summary judgment motion. Id. at 250; Waidridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).

I. Legal Standards

Plaintiffs are currently seeking recovery against defendants based on two causes of action–defamation and false light invasion of privacy. This court has previously held that Arizona law applies in this case.

A. <u>Defamation</u>

Under Arizona law, a publisher of a false and defamatory statement is liable only if: 1) he has knowledge that the statement is false; 2) he acts in reckless disregard as to the truth of the statement; or 3) he acts negligently in failing to ascertain its truth. <u>Peagler v. Phoenix Newspapers, Inc.</u>, 560 P.2d 1216 (Ariz. 1977). In this case, it is clear that the Program at issue was published to a large audience and could be considered false because it depicted Mr. Kapetanovic as a criminal when he was acquitted of the charges against him. Moreover, according to the plaintiffs, the Program caused ridicule and called into question the plaintiffs' honesty, integrity, and reputation.

The standard of fault which a defamation plaintiff must prove varies with the type of plaintiff which is bringing the action. Of particular importance in this case is the question of whether plaintiffs are public or private figures. If plaintiffs are strictly private figures, they need only show that the defendants acted with negligence in order to succeed on their defamation claims. However, if plaintiffs are public figures because of their involvement in the Croatian independence movement, then they must demonstrate that the defendants acted with actual malice to succeed on their defamation claims.

The United States Supreme Court has recognized that "[i]n some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." <u>Gertz v. Robert Welch, Inc.</u>, 418 U.S. 323, 352 (1974).

In this case, defendants contend that plaintiffs are limited purpose public figures with respect to the Croatian independence movement and the related Customs Service investigation into their

alleged attempts to smuggle arms into Croatia. To determine whether an individual has attained the status of a limited purpose public figure, the Court must look to "the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." Id. at 352.

Based on the evidence before us, we cannot conclude that plaintiffs are limited purpose public figures. The fact that Mr. Kapetanovic had been arrested and went to trial does not render him a public figure. Although defendants claim that plaintiffs had achieved broad notoriety and fame in the community regarding the Croatian independence movement, there is no concrete proof that plaintiffs were well-known on this issue. Moreover, the world was not interested in Mr. Kapetanovic because he was a public figure. However, if more evidence on this point is adduced at trial, we will re-examine the issue at that time.

Based upon the foregoing, in order to recover against any defendant for the defamatory statements in the Program, plaintiffs must prove that: 1) the defendant had knowledge of the falsity of the statements; 2) he or she acted in reckless disregard of the truth; or 3) he or she was negligent in failing to ascertain the truth.

B. False Light Invasion Of Privacy

The second cause of action that plaintiffs are seeking recovery for is false light invasion of privacy. A false light tort occurs when a defendant knowingly or recklessly published false information or innuendo about the plaintiff that a reasonable person would find highly offensive. Godbehere v. Phoenix Newspapers, Inc., 162 Ariz. 335, 338, 783 P.2d 781, 784 (1989).

With these standards in mind, we will analyze the claims against each defendant.

## II. Tradewinds

Tradewinds has moved for summary judgment claiming that it did nothing more than obtain financing for the series. Tradewinds claims that it had no responsibility for the content of the Program about which plaintiffs complain. Therefore, Tradewinds argues that it cannot be liable for false light invasion of privacy or defamation because it did not publish the statements, and it did not act knowingly, recklessly or negligently with respect to the truth of the statements.

There is some evidence to show that Tradewinds did play a role in the creation of the Program. Acting through its legally assumed name "U.S. Customs: Classified," Tradewinds obtained financing and possibly distribution for the Program. In certain documents, Mr. Cannell refers to Tradewinds and GRAB as the "co-producers" of the Program. Tradewinds also communicated with the Customs Service regarding the Program.

However, the real issue surrounding Tradewinds' entitlement to summary judgment boils down to Mr. Dalla Betta's role in the production of the Program and on whose behalf he was acting in his capacity as supervising producer of the series. Both sides agree that Mr. Dalla Betta acted as a supervising producer of the series. However, it is disputed whether he acted in this capacity on behalf of Tradewinds or GRAB Productions. If Mr. Dalla Betta was acting on behalf of Tradewinds, Tradewinds could have sufficient involvement and control of the content of the allegedly defamatory statements and thus could be liable for defamation and false light invasion of privacy.

Defendants claim that Mr. Dalla Betta served as supervising producer pursuant to a contract with GRAB Productions, although the contract is nowhere to be found. Plaintiffs claim that Mr. Dalla Betta was acting on behalf of Tradewinds when he acted as supervising producer of the series. Without production of the contract proving who Mr. Dalla Betta was acting on behalf of in his

8

capacity as supervising producer, issues of fact remain as to Tradewinds' role in the production of the Program, and the summary judgment motions must be denied.

III. Stephen Cannell

Stephen Cannell claims that he is entitled to summary judgment because he merely acted as the "on-air host" of the Program. He claims that he had no responsibility for the creation, investigation, writing, direction, production, financing, or distribution of the Program.

We find, however, that Mr. Cannell did have a role in developing the series. He prepared profit analyses and determined that a single season would bring domestic profits of approximately $ 3.5 million dollars. There is evidence that Mr. Cannell provided some of the original financing for the Program. He also provided for the original distribution of the Program, and he provided production assistance and marketing for the Program. Furthermore, he acted as the "on-air host" or narrator for the Program and profited as a result of the Program.

Evidence of Mr. Cannell's involvement with the series is demonstrated in many documents and letters. For example in a May 23, 1995 letter written by Jeffrey Dalla Betta on Tradewinds stationary to Mike Dubelko of Cannell Studios, Mr. Dalla Betta stated:

> I met with Stephen Cannell on Friday afternoon to discuss the format and content of the series. Based upon the meeting we believe that it is now imperative to begin production on the series as soon as possible. It appears as if Stephen wants to have the basic elements of an episode assembled immediately in order to make it available to New World.

Based on all of this evidence, it does not appear as though Mr. Cannell's role was merely that of a person showing up to read from the Teleprompter as an "on-air host." Mr. Cannell seems to have had a role in almost every aspect of the series at one time or another.

For these reasons, the summary judgment motions regarding Mr. Cannell are denied.

IV. Cannell Productions

Plaintiffs claim that Cannell Productions prepared and produced the "U.S. Customs: Classified" series. Cannell Productions claims that it did not participate in the creation, investigation, writing, direction, publication or distribution of the Program.

The direct evidence as to what parties were involved in the series is: 1) the contracts governing production and distribution of the series, none of which mention Cannell Productions; 2) the credits from the series, which do not mention Cannell Productions; and 3) the testimony of those with personal knowledge about the production of the series and the activities of the various Cannell entities–Mr. Cannell, Mr. Ziffren, Mr. Kurtzman, and Mr. Dalla Betta–all of whom have testified that Cannell Productions was not involved in the series.

First, the contracts governing the production of the "U.S. Customs: Classified" series identify GRAB as the series producer. They make no reference whatsoever to Cannell Productions.

Second, neither the opening or closing credits for the Program refer to Cannell Productions in any way. The credits consisted of 28 screens and list eleven individual producers, plus directors, segment producers, writers, researchers, and editors. All of those individuals were employees of, or contracted to, GRAB.

Finally, all of the witnesses with personal knowledge of the series and/or the activities of the various Cannell companies–Stephen Cannell, the owner of Cannell Productions, Kenneth Ziffren, his entertainment attorney, Howard Kurtzman, the senior vice president of Cannell Entertainment, and Jeffrey Dalla Betta, one of the supervising producers of the series-- have testified that Cannell Productions was not involved with the "U.S. Customs: Classified" series.

In contrast, plaintiffs have no direct evidence that Cannell Productions was involved with the series. The only evidence relating to Cannell Productions is a trade publication entitled "The BIB Television Programming Source Books 1997-98," which identifies "S.J. Cannell Prod." as the producer of the "U.S. Customs: Classified" series. However, we find this evidence to be unpersuasive.

A trade publication prepared by third parties who were not involved in, and do not have personal knowledge of, the distribution and production of the Program, has little, if any, probative value. Thus, plaintiffs have failed to present evidence to demonstrate that Cannell Productions should be held responsible for the alleged defamatory statements.

Plaintiffs' inability to show that Cannell Productions acted with any degree of fault or negligence mandate the entry of summary judgment both as to plaintiffs' defamation claims and as to plaintiffs' claims for false light invasion of privacy. Under Arizona law, a defamation plaintiff who cannot prove that the defendant acted with fault cannot recover on privacy claims arising from the same set of facts, as a matter of law. See e.g., In re Med. Lab., 931 F. Supp. at 1492; Unelko v. Rooney, 912 F.2d 1049, 1057-58 (9th Cir. 1990).

For these reasons, we grant Cannell Productions' motion for summary judgment.

V. Newsweb

The facts as to Newsweb also are undisputed. Newsweb owns Channel 50, a television station located in Chicago which broadcast the "U.S. Customs: Classified" episode involving plaintiffs. Newsweb had no input into, or control over, the content of the Program. On the contrary, the Program License Agreement pursuant to which Newsweb broadcast the series expressly required that Newsweb "broadcast each episode without deletion or change" and "exactly as delivered," and

11

required Newsweb to submit an affidavit "confirming that each episode . . . [was] actually broadcast as required."

Plaintiffs have not shown that Newsweb had any reason to suspect that any statements in the Program were false. Nor have plaintiffs claimed that Newsweb edited the Program despite its express agreement not to do so. Newsweb had no input into the content of the Program, no ability to change the Program before it was broadcast, and no fault in connection with the broadcast. Therefore, Newsweb, which indisputably had no creative control or authority over the Program, cannot be liable as a republisher. See Restatement (Second) of Torts sec. 578 (1977); Auvil v. CBS "60 Minutes", 800 F. Supp. 928, 931 (E.D. Wash. 1992).

Moreover, Newsweb also is entitled to a "wire service" defense. This defense was originally developed for newspapers who served as conduits for national wire service reports. See, e.g., Nelson v. Associated Press, 667 F. Supp. 1468, 1476-77 (S.D. Fla. 1987). The defense also has been applied to shield network television affiliates from liability for allegedly defamatory material contained in a national network news broadcast, when the affiliates merely acted as conduits for the broadcast and played no role in its reporting, production or editing. See Auvil v. CBS "60 Minutes", 800 F. Supp. 928, 931 (E.D. Wash. 1992).

In this case, we find that the wire service defense applies to Newsweb. Newsweb did not participate in any way in the production of the Program. It did not plan, report, produce, or edit the broadcast at issue. Instead, it acted as a mere conduit for the nationally syndicated Program, which it received via videotape. Therefore, we hold that Newsweb cannot be held liable as a matter of law for the defamatory content of the Program.

12

Plaintiffs' inability to show that Newsweb acted with any degree of fault or negligence mandates the entry of summary judgment both as to plaintiffs' defamation claims and as to plaintiffs' claims for false light invasion of privacy. Under Arizona law, a defamation plaintiff who cannot prove that the defendant acted with fault cannot recover on privacy claims arising from the same facts, as a matter of law. In re Med. Lab., 931 F. Supp. At 1492; Unelko v. Rooney, 912 F.2d 1049, 1057-58 (9th Cir. 1990).

For all of these reasons, Newsweb is entitled to summary judgment in its favor as to all of plaintiffs' claims against it.

VI. Motion for Sanctions And Motion To Strike Affidavits

Plaintiffs have filed a motion for sanctions due to spoliation of evidence and a motion to strike affidavits due to this alleged missing evidence. In their motions, plaintiffs claim that Jeffrey Dalla Betta, the president of Tradewinds deliberately destroyed records based on the following facts. During the first session of Mr. Dalla Betta's deposition, in November 1998, plaintiffs' counsel asked Mr. Dalla Betta about the existence of certain records and asked Mr. Dalla Betta to look for them. During the second session of Mr. Dalla Betta's deposition, Mr. Dalla Betta testified that he had looked for the records, but had been unable to locate them. When asked what happened to the records, Mr. Dalla Betta responded that "I have a housekeeper that takes care of my children, and I don't know what she did with them." Plaintiffs' counsel then asked whether Mr. Dalla Betta thought that his housekeeper threw them away, to which Mr. Dalla Betta responded, "I don't know." Based on that testimony, plaintiffs conclude that Mr. Dalla Betta deliberately destroyed records.

13

Spoliation consists of the "bad faith destruction of a document relevant to proof of an issue at trial." Coates v. Johnson & Johnson, 756 F.2d 524, 551 (7th Cir. 1985). In order to show bad faith, the movant must show that the accused had notice that the evidence was relevant to litigation and nonetheless proceeded to destroy it. Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 78 (3d Cir. 1994).

In this case, we find that there is no proof of the destruction of records. The fact that counsel has been unable to obtain the specified documents does not mean that the documents have been destroyed. Mr. Dalla Betta merely testified that he had looked for the documents, could not find them, and did not know where they were. This testimony does not establish any destruction of documents, much less the deliberate, bad faith destruction necessary to support the imposition of sanctions for spoliation of evidence. Therefore, we will not award sanctions, nor will we strike the affidavits of Mr. Dalla Betta or Stephen Cannell.

For these reasons, we deny plaintiffs' motion for sanctions and motion to strike the affidavits of Jeffrey Dalla Betta and Stephen Cannell.

## CONCLUSION

For all of the foregoing reasons, we grant the summary judgment motions of defendants Cannell Productions, Inc. (#182-1) and Newsweb Corporation (#181-1). We deny the summary judgment motions filed by plaintiffs, Ivan and Rosita Kapetanovic, and defendants Stephen Cannell (#179-1) and Tradewinds Entertainment, Inc.(#180-1), and defendants' joint motion for summary judgment (#183-1). We also deny plaintiffs' motion for sanctions due to spoliation of evidence (#197-1) and motion to strike the affidavits of Jeffery Dalla Betta and Stephen Cannell (197-2).

14

It is so ordered.

_____
Wayne R. Andersen
United States District Court

Dated: March 26, 2002